# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

ROSALIE L. ARDESE,                    )
                                      )
           Plaintiff,          )
                                      )
v.                                    )          **Case No. 06-CV-012-JHP**
                                      )
DCT INCORPORATED,                     )
an Oklahoma corporation,              )
                                      )
           Defendant.          )

## ORDER AND OPINION

Before the Court are Defendant's Motion for Summary Judgment (Docket No. 107),

Defendant's Supplement to Motion for Summary Judgment (Docket No. 124), Plaintiff's

Response to Defendant's Motion for Summary Judgment with Brief in Support (Docket No.

132), and the Reply and Brief in Support of Defendant's Motion for Summary Judgment (Docket

No. 144). In its motion, Defendant DCT, Inc., asserts that there are no genuine issues of material

fact and that DCT is entitled to judgment as a matter of law. In particular, DCT asserts that

Plaintiff Rosalie L. Ardese[1] should be judicially estopped from pursuing her various claims

---

[1] The Court notes that at the time of filing of DCT's motion, Gerald R. Miller, the trustee of Ardese's bankruptcy estate, was the sole plaintiff and real party in interest in this action. Nevertheless, through their filings, the parties notified the Court that prior to the filing of DCT's motion, Miller had abandoned the estate's interest in Ardese's claims upon receipt of $4,500 on behalf of Ardese, an amount sufficient to cover both her creditors' claims and the estate's administrative expenses. Subsequently, on July 19, 2007, the Court received Plaintiff's Motion to Change Style of Case and Substitute Rosalie Ardese as Party Plaintiff Instead of Trustee in Bankruptcy (Docket No. 134). The Court granted this unopposed motion pursuant to Rule 17(a) of the Federal Rules of Civil Procedure and substituted Ardese as the sole plaintiff and real party in interest in the present action. Nevertheless, because the briefing on DCT's motion already addresses Ardese's legal authority to pursue her claims against DCT, the same counsel has represented both Ardese and Miller throughout this action, and counsel for both parties agreed to the Court's treatment of DCT's motion as if filed against Ardese, the Court construes all arguments by the parties to relate to Ardese's authority as party plaintiff to pursue her claims against DCT.

against DCT. For the reasons set forth below, DCT's motion is GRANTED.

**Background**[2]

On May 12, 2001, DCT, a small, closely held corporation, entered into an agreement with the United States to provide security and other services at the McAlester Army Ammunition Depot, a munitions manufacturing plant located in McAlester, Oklahoma. Ardese, a Native American female who had been employed by DCT's predecessor since the 1990s, applied for and received a position with DCT as a security guard and dispatcher. The sensitive nature of Ardese's position mandated that Ardese obtain a security clearance and receive specialized training. Ardese was also required to carry a firearm at all times. Although Ardese performed adequately in her position, she received several disciplinary letters during her employment with DCT concerning her failure to report to work on time.

In August 2004, Ardese informed Rex Bond, President of Local 796 of the International Union, Security, Police and Fire Professionals of America (SPFPA), which represents DCT's employees at the Depot, that her supervisor, Gary Cotton, had been verbally abusive toward Ardese and other female employees and had made racially derogatory comments. Bond, in turn, reported Ardese's allegations to Cheryl Bernardi, President of DCT, who counseled Cotton about his behavior.

Subsequently, on October 1, 2004, Ardese received yet another disciplinary letter concerning her failure to report to work on time after Leon Labor, a fellow employee, found

---

[2] Pursuant to DCT's request as part of the instant motion, the Court hereby takes judicial notice of the findings and conclusions set forth in the Court's Order and Opinion (Docket No. 87) granting DCT's Motion to Dismiss Based on Lack of Standing and Judicial Estoppel and Brief in Support (Docket No. 65), which this Court by minute order subsequently converted to a motion for summary judgment pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

Ardese sleeping in her car in DCT's parking lot. On the same day, George Labor, another DCT employee, reported to Alvin Sistrunk, DCT's Security Manager, that Ardese had said that she "hated [Labor's] guts, and that...Labor 'would find out' [why Ardese hated him]." (DCT's Mot. ¶ 8 at 5.) Finally, on October 4, 2007, Bernardi received a written statement from Joe Reeves, Vice-President of Local 796, in which he claimed that Ardese had reported hearing voices. After receiving Reeves' report, Bernardi instructed Sistrunk to remove Ardese from duty with pay pending an investigation.

The following day, Bernardi, Sistrunk, Bond, and David Tolman, DCT's Vice-President, met with Ardese to discuss the reports concerning her behavior. Bernardi first inquired whether Ardese was still having problems with Cotton. Ardese indicated that she had stayed away from him. Tolman then asked Ardese whether she had been hearing voices. Ardese denied having heard voices. Nevertheless, Bernardi asked Ardese to take a drug test, to which Ardese agreed, and informed Ardese that she would be kept on leave with pay pending the results of the testing. Sistrunk later called Ardese on her telephone and informed her that her drug test had been scheduled.

On October 6, 2004, Ardese took her drug test. When Ardese contacted Sistrunk later that day, Sistrunk informed Ardese that she had passed her drug test, thereby eliminating any suspicion of illegal drug use. Sistrunk asserts that he also informed Ardese that she would be scheduled to undergo a psychological evaluation, although Ardese denies receiving such information. Sistrunk made an appointment with a local psychiatrist to have Ardese evaluated on October 16, 2004. Although Sistrunk attempted to contact Ardese by telephone on four separate occasions regarding her appointment, he failed to reach her. Likewise, although Bernardi called

Ardese twice prior to her appointment and attempted to leave messages on her voice mail, Ardese asserts that she received no such messages. Ardese acknowledges, however, that during this time she was frequently away from home visiting family at the hospital and lacked mobile telephone service.

On October 18, 2004, the psychiatrist's office informed Bernardi that Ardese had failed to appear for her psychological evaluation. At Bernardi's direction, Sistrunk attempted to call Ardese to tell her she was being placed on suspension without pay. When Ardese later called Sistrunk, he informed her that she should contact DCT's corporate office in McAlester. Accordingly, Ardese traveled to DCT's corporate office, where she met with Bernardi and Tolman. Although DCT asserts that Ardese was questioned regarding her failure to appear for her psychological evaluation and was informed that DCT was being charged $400 for the missed appointment, Ardese denies engaging in any such discussion. Likewise, although DCT contends that Ardese offered to turn in her uniform, which Bernardi construed as a voluntary resignation, Ardese claims that she was terminated.

Following her departure from DCT, on January 18, 2005, Ardese initially filed a charge against DCT with the National Labor Relations Board (NLRB), alleging that her termination violated the terms of the collective bargaining agreement between DCT and SPFPA Local 796. (DCT's Mot. Ex. HH.) On February 17, 2005, the NLRB deferred proceedings on Ardese's allegations to the grievance/arbitration procedures outlined in the collective bargaining agreement. (DCT's Mot. Ex. II.) After the SPFPA withdrew Ardese's grievance, finding insufficient evidence to support her allegations, the NLRB refused to issue a complaint. (DCT's Mot. Ex. LL.)

Similarly, on March 11, 2005, Ardese filed a Charge of Discrimination against DCT with the Equal Employment Opportunity Commission (EEOC). (DCT's Mot. Ex. X.) In her first Charge of Discrimination, Ardese alleged that DCT discriminated against her on the basis of a perceived disability. (*Id*.) On September 27, 2005, the EEOC issued a Dismissal and Notice of Rights as to the first Charge of Discrimination, informing Ardese that she would have 90 days from the receipt of the notice in which to file a lawsuit. (DCT's Mot. Ex. Y.) The same day, Ardese filed an amended Charge of Discrimination with the EEOC, raising additional claims for retaliation and racial discrimination, but making no new factual allegations. (DCT's Mot. Ex. BB.) Then, on December 24, 2005, Ardese filed a second Charge of Discrimination with the EEOC, this time asserting only claims for retaliation and racial discrimination and again making no new factual allegations. (DCT's Mot. Ex. CC.) On January 17, 2006, the EEOC issued a Dismissal and Notice of Rights as to the second Charge of Discrimination. (DCT's Mot. Ex. DD.)

On October 11, 2005, subsequent to the filing of Ardese's amended Charge of Discrimination against DCT but prior to the filing of her second Charge of Discrimination, Ardese, represented by counsel, filed a voluntary petition for discharge in bankruptcy pursuant to Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Oklahoma. (DCT's Mot. Ex. EE.) As part of her bankruptcy petition, Ardese completed various schedules detailing her assets and liabilities, including Schedule B, which requires a debtor to "list all personal property of whatever kind." (DCT's Mot. Ex. GG at 3.) In response to Item 20 of Schedule B, requiring Ardese to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor and rights to setoff

claims" (*id.* at 5), Ardese indicated that she possessed none. Likewise, in response to Item 33, which requires a debtor to list "[o]ther personal property of any kind not already listed" (*id.*), Ardese again indicated that she possessed none. Ardese also prepared a Statement of Financial Affairs, Item 4 of which requires a debtor to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately proceeding the filing of this bankruptcy case." (Docket No. 65 at 52.) In spite of her previously filed NLRB and EEOC charges, however, Ardese indicated that she had been a party to no such proceedings. Ardese signed her Schedule B and Statement of Financial Affairs under penalty of perjury. (*Id.* at 50, 57.)

Because Ardese identified no non-exempt assets that could be administered for the benefit of Ardese's creditors, the trustee of the bankruptcy estate, Gerald R. Miller, recommended that the Bankruptcy Court enter a final decree discharging Miller and exonerating his bond. (DCT's Mot. Ex. EE at 2.) Accordingly, on January 10, 2006, the Bankruptcy Court entered a Discharge of Debtor, followed by its Final Decree on January 23, 2006, discharging Miller as trustee of the bankruptcy estate and closing Ardese's bankruptcy case. (*Id.*)

On January 10, 2006, the same day that the Bankruptcy Court entered its Discharge of Debtor but prior to the Final Decree closing her bankruptcy case, Ardese filed a *pro se* complaint in this Court against DCT and various individual defendants. After obtaining counsel, Ardese twice amended her complaint. In her Second Amended Complaint, Ardese asserted against DCT claims for: (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981; (2) sexual discrimination in violation of Title VII; (3) disability discrimination in violation of the Americans with Disabilities Act; (4) breach of the collective bargaining

agreement between DCT and SPFPA in violation of § 301 of the Labor Management Relations Act of 1947; (5) negligent hiring, training, and retention of employees; and (6) intentional infliction of emotional distress.

On July 21, 2006, DCT filed its Motion to Dismiss Based on Lack of Standing and Judicial Estoppel and Brief in Support (Docket No. 65), which the Court later converted into a motion for summary judgment. In its motion, DCT argued that because Ardese's various claims against DCT arose prior to the filing of Ardese's bankruptcy petition, those claims had become part of the bankruptcy estate upon the filing of the bankruptcy petition. As a result, DCT argued that Ardese lacked any standing to pursue her claims against DCT. Alternatively, DCT argued that Ardese should be judicially estopped from asserting her claims against DCT based upon her failure to disclose those claims in her bankruptcy filings.

Subsequent to the filing of DCT's motion, Miller and Ardese filed a joint motion to join Miller as a party plaintiff in this case. In their joint motion, Miller and Ardese noted that pursuant to a motion by Ardese, the Bankruptcy Court had reopened Ardese's bankruptcy case, and Ardese had amended her Schedule B and Statement of Financial Affairs to include all of the claims against DCT that Ardese had asserted part of the present action. Based upon his status as trustee of Ardese's newly reopened and amended bankruptcy estate, Miller asserted that he was a proper party to Ardese's action against DCT. Finding no objections by DCT, the Court granted the joint motion.

Subsequently, on December 19, 2006, the Court entered its Order and Opinion granting DCT's motion to dismiss as to Ardese, concluding that only Miller, as the trustee of Ardese's bankruptcy estate, possessed standing to pursue Ardese's various claims against DCT. Having

resolved DCT's motion on alternative grounds, the Court expressly declined to rule on DCT's judicial estoppel argument. Furthermore, because the motion had been filed prior to Miller becoming a party in the case, the Court did not address the application of DCT's various arguments to Miller.

Finally, on June 15, 2007, DCT filed the instant motion for summary judgment. In its motion, DCT raises numerous substantive and procedural challenges to the factual and legal sufficiency of Ardese's individual claims against DCT. In addition, DCT reasserts its argument that Ardese should be judicially estopped from pursuing her claims against DCT based upon her failure to list those claims as assets of her bankruptcy estate prior to the Bankruptcy Court's original order discharging Ardese's debts and closing her bankruptcy case. Because DCT's judicial estoppel argument would dispose of all claims currently pending in this action,[3] the Court addresses this argument first below.

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[3] Pursuant to the Amended Pretrial Order entered on August 3, 2007, as modified by the Court's order substituting Ardese as the sole plaintiff and real party in interest in the present action, Ardese now asserts against DCT claims for (1) racial discrimination and harassment in violation of Title VII, (2) sexual discrimination and harassment in violation of Title VII, (3) racial discrimination in violation of § 1981, (4) retaliation in violation of Title VII, (5) negligent hiring, training, and retention, (6) intentional infliction of emotional distress, and (7) exemplary damages. (Am. Pretrial Order at 3.) The Court notes that all "claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint and, conversely, the inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002).

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

The purpose of a motion for summary judgment is "to isolate and dispose of factually unsupportable claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). Thus, when evaluating a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Nevertheless, the moving party "need not affirmatively negate the nonmovant's claim." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997). Instead, the moving party bears an initial burden of demonstrating "an absence of evidence to support the nonmoving party's case." *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1097 (10th Cir. 1999) (quotations omitted); *see also Celotex Corp.*, 477 U.S. at 325. Once the moving party carries this initial burden, "the burden then shifts to the nonmoving party, who must offer evidence of specific facts that is sufficient to raise a 'genuine issue of material fact.'" *Id.*; *see also Anderson*, 477 U.S. at 247-248. "If a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998); *see also Celotex Corp.*, 477 U.S. at 322-23.

The doctrine of judicial estoppel provides that "where a party assumes a certain position

in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). The purpose of this rule is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001) (internal citations and quotations omitted). In *New Hampshire*, the Supreme Court identified "several factors [that] typically inform the decision whether to apply the doctrine in a particular case." *Id*. at 750. These factors include: (1) whether "a party's latter position [is] 'clearly inconsistent' with its earlier position," (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled," and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*. at 750-751 (internal citations and quotations omitted).

In its recently released decision in *Eastman v. Union Pacific Railroad Co.*, No. 05-8106, 2007 WL 1954031 (10th Cir. July 6, 2007), the Tenth Circuit reviewed a district court's application of judicial estoppel to bar a debtor from asserting against a defendant claims that the debtor failed to list as assets in a prior chapter 7 bankruptcy case. In *Eastman*, one of the plaintiffs, Wayne Gardner, who had been injured in an automobile accident while working for Union Pacific, initially filed an action in federal district court in September 2003, asserting a federal claim against Union Pacific pursuant to the Federal Employers' Liability Act and

asserting related state law negligence claims against other individual defendants. Subsequently, in May 2004, Gardner filed a voluntary petition for discharge under chapter 7 of the Bankruptcy Code but omitted from Item 20 of Schedule B and Item 4 of his Statement of Financial Affairs any mention of the pending personal injury action. Moreover, at the June 2004 meeting of creditors, in response to direct questioning by the bankruptcy trustee, Gardner denied the existence of any personal injury actions, instead implying that his action against Union Pacific was a form of worker's compensation action exempt from inclusion in the bankruptcy estate. Accordingly, in August 2004, the bankruptcy court granted Gardner a no-asset discharge of indebtedness.

Upon first learning of the bankruptcy case in July 2005, Gardner's counsel in the personal injury action immediately notified the bankruptcy trustee of the omitted action. The trustee in turn filed a motion with the bankruptcy court to reopen the Gardner's bankruptcy case so that the personal injury action could be listed and administered as an asset of the bankruptcy estate, which the bankruptcy court granted. After several unsuccessful attempts to sell the cause of action back to Gardner for his creditors' benefit, the trustee sought and received leave from the district court to intervene as the real party in interest in the personal injury action. Thereafter, Union Pacific filed a motion for summary judgment against Gardner and the trustee, asserting that under the doctrine of judicial estoppel, Gardner should be barred from pursuing his previously omitted claims against Union Pacific.

Applying the same analytical framework employed by the Supreme Court in *New Hampshire*, the district court found that (1) Gardner had taken a position in his personal injury action that was clearly inconsistent with his prior position before the bankruptcy court that no

such action existed, (2) the bankruptcy court had relied upon Gardner's prior position when it granted him a "no asset" discharge under chapter 7, and (3) Gardner would derive unfair advantage if permitted to maintain his personal injury action after receiving a discharge in the bankruptcy court. Because the undisputed evidence offered by Union Pacific satisfied each of the three *New Hampshire* factors, the district court agreed that Gardner should be judicially estopped from maintaining his personal injury action against Union Pacific and granted the motion for summary judgment.

On appeal, Gardner challenged the district court's characterization of the facts, arguing that his failure to list the pending personal injury action had been the result of mistake or inadvertence, rather than intentional deception. Relying on the Supreme Court's statement in *New Hampshire* that "it *may* be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake," 532 U.S. at 753 (emphasis added), Gardner argued that the district court should not have judicially estopped him from pursuing his personal injury action.

In affirming the district court's decision, the Tenth Circuit noted that other circuits, "for what seem to us sound reasons, have not been overly receptive to debtors' attempts to recover on claims about which they 'inadvertently or mistakenly' forgot to inform the bankruptcy court." *Eastman*, 2007 WL 1954031, at *4. Rather, "courts addressing a debtor's failure to satisfy the legal duty of full disclosure to the bankruptcy court have deemed such failure inadvertent or mistaken 'only when...the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'" *Id*. (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir.1999)). Thus, "[w]here debtors have both knowledge of the claims and a motive to conceal

them, courts routinely...infer deliberate manipulation." *Id*.

Applying this standard to Gardner's case, the Tenth Circuit found that the only reasonable inference to be drawn from the undisputed facts of the case was that Gardner had knowledge of his own pending action against his employer. *Id*. at * 6. As the Tenth Court noted, "[t]he bankruptcy code imposes a duty upon a debtor to disclose all assets, including contingent and unliquidated claims," and this duty "encompasses disclosure of all legal claims and causes of action, pending or potential, which a debtor might have." *Id*. The Tenth Circuit also concluded that Gardner clearly "ha[d] a motive to sweep his personal injury action 'under the rug' so he could obtain a discharge free and clear of his creditors," observing that a debtor's "ever present motive to conceal legal claims and reap the financial rewards is why so many of the cases applying judicial estoppel involve debtors-turned-plaintiffs who have failed to disclose such claims in bankruptcy." *Id*. at *7. As a result, the Tenth Circuit rejected Gardner's argument that he had merely mistakenly or inadvertently failed to disclose his personal injury action against as an asset of his bankruptcy estate, instead concluding that Gardner's case was "indistinguishable from the overwhelming majority of cases where debtors, who have failed to disclose legal claims to the bankruptcy court without credible evidence of why they did so, have been judicially estopped from pursuing such claims subsequent to discharge."

Like the district court in *Eastman*, the Court concludes the undisputed facts of this case satisfy the factors outlined by the Supreme Court in *New Hampshire*. First, as noted above, the Bankruptcy Code imposed upon Ardese a duty to disclose all of her potential or pending legal claims against DCT as assets of her bankruptcy estate. *Eastman*, 2007 WL 1954031, at *6; *see* 11 U.S.C. § 521(1); *In re Coastal Plains*, 179 F.3d at 208. In light of this duty, by failing to

13

disclose any such claims in either her Schedule B or Statement of Financial Affairs, Ardese affirmatively represented to the Bankruptcy Court that no such claims existed, a position clearly inconsistent with her position in this case. Second, in granting Ardese a "no asset" discharge under chapter 7 and closing her bankruptcy case, the Bankruptcy Court clearly relied upon Ardese's prior position that she possessed no potential or pending claims against DCT, such that this Court's acceptance of Ardese's current position that she does possess valid claims against DCT would create the perception that either the Bankruptcy Court or this Court was misled. *See Eastman*, 2007 WL 1954031, at *7. Third, like the debtor in *Eastman*, Ardese received the benefit of a discharge in bankruptcy without ever having disclosed her pending and potential claims against DCT, providing her with an unfair advantage over her creditors. *Id*. Thus, the undisputed facts of this case support the application of judicial estoppel to Ardese's claims against DCT.

Nevertheless, in spite of the obvious parallels between the facts of *Eastman* and those of the present case, Ardese offers numerous arguments against the application of judicial estoppel to her claims against DCT. First, Ardese asserts that DCT's judicial estoppel argument is moot because Ardese "has 'squared herself' with the Bankruptcy Trustee." (Resp. at 13.) Although admitting that she failed to disclose her claims against DCT as assets of the bankruptcy estate, Ardese notes that "[t]he Bankruptcy case was reopened" and "[t]his case was made an asset of the Bankruptcy Estate." (*Id*. at 14.) Ardese further notes that she "made a settlement with the Bankruptcy Trustee, paying all creditor's claims in full, and purchasing all right, title and interest of the Trustee in this lawsuit." (*Id*.) Accordingly, Ardese contends that "[i]f any 'integrity of the judicial system' was diminished by [her] failure to originally list this case as an asset, it was

reinstated by her reopening the bankruptcy proceedings, with Court approval" and "[t]he stain on the integrity of the system, if any, was washed away by [her] action in seeking to reopen the bankruptcy and the Bankruptcy Court's action in letting it be done." (*Id.* at 14-15.)

As the Tenth Circuit's opinion in *Eastman* makes clear, however, the fact that Ardese's bankruptcy case "was reopened and [her] creditors were made whole once [her] omission became known is inconsequential." 2007 WL 1954031, at *7. "A discharge in bankruptcy is sufficient to establish a basis for judicial estoppel, 'even if the discharge is later vacated.'" *Id.* (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001)). In reaching this conclusion, the Tenth Circuit observed that permitting a debtor "to 'back up' and benefit from the reopening of his bankruptcy only after his omission had been discovered would 'suggest[] that a debtor should consider disclosing potential assets only if he is caught.'" *Id.* (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)). Given the clear statutory policy favoring full disclosure of a debtor's assets, this Court is no more inclined than the Tenth Circuit to adopt a rule that would encourage a debtor like Ardese to omit pending and potential claims from his or her bankruptcy filings.[4]

Ardese also repeatedly asserts that she "is a lay person unskilled in the law" (Ardese's Resp. at 14) and that she "proceeded *pro se* when she filed her EEOC Charge of Discrimination,

---

[4] Likewise, Ardese's statements that "[i]t should be inferred that the Bankruptcy Court acted with integrity" and that "the Bankruptcy Trustee has a fiduciary duty to protect the creditors and act judicially," (Ardese's Resp. at 15), though undoubtedly true, are irrelevant. By permitting the bankruptcy case to be reopened so Ardese's improperly omitted claims against DCT could be administered to the benefit of Ardese's creditors, the Bankruptcy Court did not, as Ardese seems to imply, sanction Ardese's initial failure to comply with the her duty of disclosure. Nor does the Court accept Ardese's assertion that by raising the issue of judicial estoppel, DCT is in any way "condemning, without reason, the Bankruptcy Court, which participated in and approved of everything that was done." (*Id.*)

as she did when she originally filed this lawsuit" (*id*. at 15). Thus, because "*pro se* litigants are not held to the same high standards as lawyers" and "even lawyers have difficulty in this area of the law" (*id*.), Ardese suggests her failure to list her pending and potential claims against DCT as assets in her bankruptcy case filings should be excused.

Conspicuously absent from Ardese's argument is the fact that she *was* represented by counsel when she initially filed for bankruptcy and improperly omitted her pending and potential claims against DCT. (DCT's Mot. Ex. EE at 1.) Thus, Ardese's observation that she lacked legal representation during her administrative proceedings and, initially, in her action before this Court is irrelevant. Moreover, as the Tenth Circuit observed in *Eastman*, "[a] large portion of debtors who file for chapter 7 bankruptcy surely are...'unsophisticated' and 'unschooled'..., yet have little difficulty fully disclosing their financial condition to the bankruptcy court." 2007 WL 1954031, at *7. Thus, the Tenth Circuit concluded that a debtor's assertion that "he simply did not know better and his attorney 'blew it' is insufficient to withstand application of the doctrine [of judicial estoppel]. *Eastman*, 2007 WL 1954031, at *7. For the same reason, even if Ardese had been without counsel at the crucial point of filing her bankruptcy petition, that fact alone would be insufficient to preclude application of judicial estoppel to her claims against DCT.

Ardese next argues that the facts of the present case are distinguishable from those in *Eastman* because DCT has presented no "evidence of direct intent to deceive the bankruptcy court" (Resp. at 16.) Ardese notes that in *Eastman*, the debtor, when questioned under oath by the trustee, stated that he had no existing lawsuits. Ardese argues that "[t]his was the crucial event in the Tenth Circuit's reasoning that judicial estoppel should be applied." (*Id*. at 17.) According to Ardese, "the Tenth Circuit said, 'What the Court finds most telling...is the fact that

when given the opportunity at the meeting of creditors to reveal the pending litigation, Mr. Gardner did not disclose his personal injury action.'" (*Id*.) Thus, Ardese concludes that "[t]he Tenth Circuit stressed the 'integrity of the judicial process' was hurt because of direct representations to the Bankruptcy Trustee, not the mere fact the asset was not originally listed." (*Id*. at 18.)

Ardese's arguments, however, mischaracterize the Tenth Circuit's opinion. Contrary to Ardese's implicit assumption, nothing in the Tenth Circuit's opinion makes "evidence of direct intent to deceive the bankruptcy court" a prerequisite to a Court's application of judicial estoppel. As noted above, the Tenth Circuit stated that "[w]here debtors have both knowledge of the claims and a motive to conceal them, courts routinely...infer deliberate manipulation." *Eastman*, 2007 WL 1954031, at *4. Moreover, although the Tenth Circuit quotes from the district court's order, in which the district court describes Gardner's failure to disclose his personal injury action to the trustee as "most telling," the Tenth Circuit did not explicitly state that the presence or absence of this fact was crucial to upholding the district court's decision. Indeed, the Tenth Circuit observed that even the district court had been "[c]areful *not* to suggest Gardner or his bankruptcy attorney intentionally lied to the bankruptcy court." *Eastman*, 2007 WL 1954031, at *3 (emphasis added).

Additionally, while Ardese attempts to downplay the significance of her failure to disclose her pending and potential claims against DCT in her Schedule B and Statement of Financial Affairs, nothing in *Eastman* suggests that "the mere fact the asset was not originally listed" is insufficient, without more, to justify application of judicial estoppel to Ardese's undisclosed claims. Indeed, in *Eastman*, the Tenth Circuit emphasized that "[n]owhere on the

petition, schedules, or statements Gardner filed with the bankruptcy court did he disclose his pending personal injury action." *Id*. at *6. The fact that, from the Tenth Circuit's perspective, the trustee's later conversations with Gardner and his attorney further "diffuse[d] the situation and divert[ed] attention from the extent of Gardner's pending claims," *id*. at *6, does not lessen the importance of disclosing all assets, including pending and unliquidated claims, in bankruptcy filings. As the Fifth Circuit noted in *In re Coastal Plains*, "[v]iewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized." 179 F.3d at 208. Because "the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets...[t]he courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding." *Id*. (quoting *Rosenshein v. Kleban*, 919 F. Supp. 98, 104 (S.D.N.Y. 1996)).

Finally, like the debtor in *Eastman*, Ardese contends that her failure to disclose her pending and potential claims against DCT was the result of mistake or inadvertence, and should therefore be excused. As noted above, "a debtor's failure to satisfy the legal duty of full disclosure to the bankruptcy court ha[s] [been] deemed...inadvertent or mistaken '*only* when...the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'" *Eastman*, 2007 WL 1954031, at *4 (quoting *In re Coastal Plains*, 179 F.3d at 210) (emphasis added). The Court notes that Ardese does not contend that she lacked knowledge of her undisclosed claims; nor could she. *See In re Coastal Plains*, 179 F.3d at 208 ("The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information...prior to confirmation to suggest that it may have a possible cause of action,

then that is a 'known' cause of action such that it must be disclosed.") (quotations omitted). Instead, Ardese contends that she possessed no motive to conceal her claims against DCT from the Bankruptcy Court.

In support of this position, Ardese relies upon her affidavit of July 16, 2007. In her affidavit, Ardese states that her "intent in filing with the EEOC was to try to get [her] job back" and that she "did not then know it might be possible to later file a lawsuit seeking money damages against DCT." (Ardese's Resp. Ex. 4 ¶ 5 at 1.) Indeed, Ardese alleges that she "had not yet considered, and...certainly did [not] know, that [she] might eventually file a lawsuit against DCT seeking money." (*Id*. ¶ 8 at 2.) Instead, after again raising her status as "a lay person, unskilled in the law" (*id*. ¶ 11), Ardese asserts that she never "intended to deceive or mislead the Bankruptcy Court as to what assets [she] possessed," but "simply did not see [her] EEOC Charge [o]f Discrimination as a possible asset at the time [her] Bankruptcy Petition was filed" (*id*. ¶ 12). Accordingly, Ardese asserts that "at a minimum, there is an issue of fact or credibility on motive to conceal." (Resp. at 18-19.)

Nevertheless, the Court notes that in her General Intake Questionnaire, prepared by Ardese in conjunction with the first Charge of Discrimination that she filed with the EEOC, Ardese specifically lists "back pay" and "compensatory damages" as two forms of expected relief. (DCT's Mot. Ex. V at 5.) Similarly, in her labor grievance, filed on March 13, 2005, with SPFPA Local No. 796, Ardese requests as relief for DCT's violation of her rights that she "be made whole for all lost wages and benefits." (DCT's Mot. Ex. JJ at 1.) Thus, in at least two separate administrative filings prepared by Ardese prior to her bankruptcy case, Ardese clearly demonstrated her awareness of and presumed entitlement to monetary damages as one form of

relief for DCT's alleged wrongdoing.

Furthermore, ignoring Ardese's own administrative filings and accepting as true her assertion that at the time of her bankruptcy petition she was unaware of potential monetary claims against DCT, the Court notes that Ardese filed her initial complaint in the present action on January 10, 2006, prior to the Bankruptcy Court's Final Decree closing her bankruptcy case. In her complaint, however, Ardese asserts her entitlement to "reinstatement of job, *back wages*, and all other relief which is deemed just." (Compl. at 13 (emphasis added).) Thus, in the words of her affidavit, Ardese clearly "kn[e]w it might be possible to later file a lawsuit seeking money damages against DCT" (Ardese's Resp. Ex. 4 ¶ 5 at 1) at some point prior to the termination of her bankruptcy case. Because a debtor's "duty of disclosure in a bankruptcy proceeding is a continuing one," *In re Coastal Plains*, 179 F.3d at 208, even assuming that Ardese was unaware of any potential monetary recovery against DCT when she filed her bankruptcy petition, Ardese clearly possessed knowledge of a potential monetary recovery against DCT, and an accompanying motive to conceal her claims from the Bankruptcy Court, prior to the termination of her bankruptcy case.

Viewing all evidence in the light most favorable to Ardese, the Court finds that Ardese has failed to create a genuine issue of material fact as to whether she had considered or was aware of her potential claim for monetary damages against DCT. Instead, based upon the undisputed historical facts of this case, the Court finds that Ardese possessed both knowledge of her pending and potential claims against DCT and a "motive to conceal [her] claims and reap the financial rewards." *Eastman*, 2007 WL 1954031, at *7. As a result, the Court finds that Ardese's failure to disclose her claims against DCT in her Schedule B and Statement of Financial Affairs

was not the result of mistake or inadvertence. Because Ardese's conduct otherwise meets the factors set forth in *New Hampshire* as applied in *Eastman*, the Court concludes that Ardese should be judicially estopped from pursuing any of her previously undisclosed claims against DCT. Having resolved DCT's motion on the basis of judicial estoppel, the Court declines to address DCT's additional arguments.

### Conclusion

For the reasons set forth above, Defendant DCT Incorporated's Motion for Summary Judgment (Docket No. 107) is hereby GRANTED.

IT IS SO ORDERED this 6th day of August, 2007.

James H. Payne
United States District Judge
Eastern District of Oklahoma